# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ZONG LOR,

        Petitioner,

  v.                                                                                 Case No. 04C0685

JANE GAMBLE,

        Respondent.

## DECISION AND ORDER

Petitioner Zong Lor, a Wisconsin state prisoner, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions by a jury of being a party to the crime of first-degree reckless homicide and first-degree recklessly endangering safety, both while using a dangerous weapon, for which he was sentenced to a total of fifty years in prison. As grounds for relief, petitioner alleges that his trial counsel provided ineffective assistance by stipulating that a missing witness was "unavailable," thereby allowing the witness's preliminary hearing testimony to be read to the jury. He further contends that his rights to confrontation and a fair trial were violated when the trial court admitted the missing witness's prior testimony. Finally, he argues that his post-conviction/appellate counsel was ineffective because he did not challenge trial counsel's advice that petitioner reject a plea offer and go to trial.

### I. FACTS AND BACKGROUND

Petitioner was charged with first-degree intentional homicide and attempted first-degree intentional homicide arising out of his participation in a drive-by shooting directed at two members of a rival gang, during which one person was killed. (Answer [R. 7] Ex. T

at 2.) There were several people in the car from which the shots were fired, and the surviving victim was unable to identify the shooter, other than that he had long hair, and did not pick petitioner out of a line-up or photo array. However, at petitioner's preliminary hearing, one of the occupants of the car, Meng Vang, testified that he observed petitioner's arm sticking out of the window with a gun in his hand, and that petitioner said he was shooting at a rival gang. The state subpoenaed Vang, a minor, to appear at petitioner's trial by serving his father. In addition, the state contacted Vang about a week before trial to remind him that he needed to be in court, and Vang said that he would probably come with his parents. When Vang failed to appear at trial, the court issued a body attachment for Vang's father, who was brought into court and stated that he had shown the subpoena to his son but had not seen him in several days and did not know where he was. The court then issued a body attachment for Vang, but officers could not locate him. Petitioner's lawyer objected to the service of the subpoena on Vang's father and argued that Vang's testimony was unreliable, but he agreed that Vang was "unavailable," and the trial court admitted Vang's preliminary hearing testimony. (Id. Ex. E, Q, X at 3-6, Y at 4-8.) The jury convicted petitioner of the lesser included offenses of being a party to the crime of first-degree reckless homicide and first-degree recklessly endangering safety. (Id. Ex. A.)

Represented by new counsel, petitioner filed a post-conviction motion for a new trial, arguing that trial counsel was ineffective in conceding that Vang was unavailable, and that the state had made an insufficient showing to satisfy the Confrontation Clause. The trial judge denied the motion, holding that he would have found Vang unavailable even if counsel had objected, and that because Vang was thoroughly cross-examined at the preliminary hearing the testimony possessed sufficient indicia of reliability to satisfy the

Confrontation Clause. (Id. Ex. B at A-3 - A-5.) The state court of appeals affirmed, finding that the prosecution had made reasonable efforts to obtain Vang's presence, that counsel was not ineffective for conceding the issue, and that the trial court had not plainly erred by admitting the preliminary hearing testimony. (Id. Ex. E.) Petitioner sought review in the state supreme court, arguing that the state had not made reasonable efforts to obtain Vang's presence (Id. Ex. F), but the court denied the petition on October 23, 2001. (Id. Ex. G.)

On March 12, 2002, petitioner filed a pro se petition for habeas corpus in the state court of appeals pursuant to State v. Knight, 168 Wis. 2d 509 (1992), arguing that his appellate counsel was ineffective for failing to argue in petitioner's direct appeal that the trial court erred in admitting a booking photograph depicting petitioner in jail garb. (Id. Ex. H.) The court of appeals first held that appellate counsel was not ineffective for failing to raise the issue because trial counsel had not objected (ostensibly forfeiting the issue), and petitioner had not alleged ineffective assistance of trial counsel on this issue. (Id. Ex. J.) On a motion for reconsideration, the court of appeals reached the merits and held that, under the circumstances, the trial court had not abused its discretion in admitting the photo and thus appellate counsel was not ineffective for failing to raise the issue. (Id. Ex. K.) Petitioner sought review in the state supreme court (Id. Ex. L), but the court declined (Id. Ex. M).

On December 2, 2002, petitioner filed a motion for post-conviction relief in the trial court under Wis. Stat. § 974.06 and State ex rel. Rothering v. McCaughtry, 205 Wis. 2d 675 (Ct. App. 1996), arguing that his post-conviction counsel was ineffective for failing to challenge trial counsel's performance in (1) advising him to reject a plea agreement, (2)

3

failing to challenge the admission into evidence of a gun case seized from his home, and (3) failing to object to the introduction of the booking photo. The trial court found sufficient cause for petitioner's failure to raise these issues earlier, declining to apply the rule of State v. Escalona-Naranjo, 185 Wis. 2d 169 (1994), and addressed the motion on the merits. The court found that it would have admitted the gun case and booking photo even if trial counsel had objected and thus post-conviction counsel was not ineffective for failing to pursue these issues. The trial court also rejected petitioner's claim regarding counsel's advice on the plea, noting that petitioner failed to specify whether the proposed plea agreement would have capped his sentence at some figure less than he received (regardless of the state's recommendation). The court also noted that even if petitioner's counsel advised him to reject the deal and take his chances at trial, such advice was not unreasonable. Finally, the court noted that counsel allegedly advised petitioner that there was a good chance of acquittal but did not guarantee acquittal. (Id. Ex. N at A-3 – A-8.)

Petitioner appealed, but the court of appeals affirmed, finding that given the nature of the evidence and the viable mistaken identity defense petitioner had, it was not unreasonable for counsel to advise petitioner to go to trial. The appellate court further found that petitioner had not shown that, but for counsel's advice, he would have taken the deal. It noted petitioner's statement at sentencing that he was "'not man enough to tell the truth in the first place, that's why I took this case to a jury trial.'" (Id. Ex. Q at 6.) On the other two issues, the court found that petitioner had presented no evidence that a challenge to the admission of the gun case would have been successful, and that the jail photo depicted petitioner after his arrest on the instant offense, which the jury already knew, and was admitted for an important reason – to show the length of petitioner's hair.

4

(Id. Ex. Q at 6-7.) Petitioner's request for supreme court review was denied on April 20, 2004. (Id. Ex. R.) He filed the instant petition on July 15, 2004.

## II.  DISCUSSION

**A.    Procedural Default**

Before a federal court may entertain his claims for habeas relief, the petitioner must first exhaust the remedies available to him in the state courts. 28 U.S.C. § 2254(b)(1)(A). Failure to do so constitutes procedural default. Chambers v. McCaughtry, 264 F.3d 732, 737 (7th Cir. 2001). To exhaust state remedies, the petitioner must fully and fairly present his federal constitutional claims at all available levels of the state court system, up to and including discretionary review in the state supreme court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Chambers, 264 F.3d at 737. To satisfy the requirement of fair presentment, the petitioner must present both the operative facts and the legal principles that control each claim to the state judiciary. Chambers, 264 F.3d at 738. In determining whether the petitioner has done this, the court considers whether he: (1) relied on federal cases engaging in constitutional analysis; (2) relied on state cases engaging in constitutional analysis; (3) framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) alleged a fact pattern that is well within the mainstream of constitutional litigation. Verdin v. O'Leary, 972 F. 2d 1467, 1473-74 (7th Cir. 1992).

If none of the above factors is present and the state has not otherwise signaled its satisfaction with the presentment of the federal claim, then the state courts did not have a fair opportunity to consider the claim. Wilson v. Briley, 243 F.3d 325, 327-28 (7th Cir. 2001). However, the presence of any one of the factors does not automatically mean that

5

the claim has been fairly presented. Id. at 328. "The bottom line is that the task of the habeas court in adjudicating any issue of fair presentment is assessing, in concrete, practical terms, whether the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis." Ellsworth v. Levenhagen, 248 F.3d 634, 639 (7th Cir. 2001) (internal quotation marks omitted).

Respondent argues that petitioner defaulted his claim that counsel was ineffective in conceding that Vang was unavailable because he failed to raise the issue in his petition for review to the state supreme court on direct appeal. The petition, prepared by petitioner's post-conviction/direct appeal counsel, stated that the issue presented was whether Vang was properly found to be unavailable. (Answer Ex. F at 1.) Petitioner mentioned that the issue had been raised in the context of an ineffective assistance of counsel claim, that he had requested a Machner hearing,[1] and cited State v. Bentley, 201 Wis. 2d 303, 309-10 (1996)[2] for the rule on when a hearing on a post-conviction motion must be held (Id. Ex. F at 12), but he did not argue in the petition that trial counsel was ineffective for stipulating that Vang was unavailable. Rather, the entire petition was devoted to arguing that the lower courts had erred in finding Vang unavailable.

Petitioner argues that omission of the ineffective assistance claim from the statement of issues was not dispositive, see, e.g., Beauchamp v. Murphy, 37 F.3d 700, 704 (1st Cir. 1994), and that prisoners are permitted to reformulate their claims without

---

[1] Under State v. Machner, 92 Wis. 2d 797 (Ct. App. 1979), a post-conviction hearing may be held when a criminal defendant's trial counsel allegedly provided ineffective assistance.

[2] Bentley involved a post-conviction motion to withdraw a plea of guilty based on ineffective assistance. Id. at 306.

6

abandoning them so long as the substance remains the same, see, e.g., Sweeney v. Carter, 361 F.3d 327, 333 (7th Cir.), cert. denied, 125 S. Ct. 657 (2004). However, petitioner did more than simply fail to list the ineffective assistance claim in the statement of issues or rephrase the claim. He omitted it entirely, presenting only the confrontation issue. See Howard v. O'Sullivan, 185 F.3d 721, 726 (7th Cir. 1999) (finding that discussion of facts underlying claim of ineffective assistance of trial counsel was insufficient to present the claim); see also Kimmelman v. Morrison, 477 U.S. 365, 374-75 (1986) (discussing differences between ineffective assistance claim and claim based on the underlying trial court error). That the ineffective assistance claim and the confrontation claim were based on a common set of facts is insufficient. Sweeney, 361 F.3d at 333 (citing United States ex rel. Nance v. Fairman, 707 F.2d 936, 941 (7th Cir. 1983); Spurlark v. Wolff, 699 F.2d 354, 356 (7th Cir. 1983); Wilks v. Israel, 627 F.2d 32, 38 (7th Cir. 1980); Macon v. Lash, 458 F.2d 942, 948 (7th Cir. 1972)). Petitioner relied on no federal or state cases discussing ineffective assistance in making his argument, nor did he frame the issue in terms that would have alerted the state supreme court that he was making such a claim. Merely citing Machner and Bentley was insufficient. Likewise, the fact that petitioner raised the issue before the lower state courts was not enough. Baldwin v. Reese, 541 U.S. 27, 32 (2004) (holding that "a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief . . . that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so"). Thus, petitioner did not present this ineffective assistance claim to the state supreme court, procedurally defaulting it for habeas review. O'Sullivan, 526 U.S. at 845.

7

Procedural default may be excused if the petitioner can show good cause for his default and actual prejudice if the court declined to review the claim, or that a failure to review the claims on procedural grounds would result in a fundamental miscarriage of justice. Howard, 185 F.3d at 726. In the present case, petitioner has made no attempt to make either showing, instead arguing that he did fairly present the claim. Therefore, I cannot excuse petitioner's default.[3]

However, as respondent concedes, petitioner did preserve for review the underlying claim that he was denied a fair trial and his right to confrontation based on the admission of the preliminary hearing testimony. He also exhausted his claim that counsel was ineffective in recommending that he reject a plea offer and go to trial.[4] I proceed now to the merits of these claims.

**B.   Merits**

**1.   Standard of Review**

A federal court may grant a writ of habeas corpus only if the state court decision on the merits of the petitioner's federal claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable

---

[3]The petition for review on direct appeal was prepared by petitioner's post-conviction/appellate counsel, whom petitioner has claimed performed deficiently in several respects. However, petitioner has not alleged that post-conviction counsel was ineffective in failing to include the defaulted issue in the petition for review. Nor did he make such claim to the state courts. Before a habeas petitioner may rely on ineffective assistance as "cause," he must first exhaust that claim in state court. Edwards v. Carpenter, 529 U.S. 446, 451 (2000). Petitioner has not done so. Thus, I see no excuse for petitioner's default.

[4]He did so by bringing a motion under § 974.06 and Rothering, and appealing the denial of that motion all the way to the state supreme court.

8

determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

> A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that reached by the Supreme Court]." Williams v. Taylor, 529 U.S. 362, 405, 120 S. Ct. 1495, 146 L. Ed.2d 389 (2000). An "unreasonable application" of Supreme Court precedent occurs when "the state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from [the Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407, 120 S. Ct. 1495; see also Jackson v. Miller, 260 F.3d 769 (7th Cir. 2001).

Dixon v. Snyder, 266 F.3d 693, 700 (7th Cir. 2001) (footnote omitted; alteration in original). The federal habeas court reviews the state court's legal conclusions de novo under § 2254(d), but in order to issue a writ must conclude that the state court's decision was both incorrect and unreasonable. Id.; see also Williams, 529 U.S. at 411 (holding that the term "unreasonable" in § 2254(d)(1) is not synonymous with "erroneous" or "incorrect"); Ward v. Sternes, 334 F.3d 696, 703 (7th Cir. 2003) (stating that under § 2254(d) the habeas court's "task is to uphold those outcomes which comport with recognized conventions of legal reasoning and set aside those which do not").

    **2.    Application**

        **a.    Confrontation Claim**

Petitioner contends that he was denied his Sixth Amendment right to confront witnesses and his due process right to a fair trial when Vang's preliminary hearing testimony was introduced at trial. The Confrontation Clause of the Sixth Amendment

"restrict[s] the range of admissible hearsay" that may be admitted at trial, Ohio v. Roberts, 448 U.S. 56, 65 (1980), and thus guarantees an accused the right to be confronted with the witnesses against him, Pointer v. Texas, 380 U.S. 400, 403 (1965).

At the time petitioner's claim was decided by the Wisconsin judiciary, the Supreme Court followed a two-step test for determining whether the admission of hearsay violated the Sixth Amendment.[5] First, in the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant. Roberts, 448 U.S. at 65. Second, if a witness is shown to be unavailable, his statement is admissible only if it bears sufficient "indicia of reliability." Id. "Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." Id. at 66.

In the present case, petitioner does not argue the second point. See Barber v. Page, 390 U.S. 719, 722 (1968) (stating that "there has traditionally been an exception to the confrontation requirement where a witness is unavailable and has given testimony at

---

[5]In 2004, the Supreme Court overruled the second prong of the test set forth in Ohio v. Roberts, holding that testimonial statements from an unavailable witness may be admitted only when the defendant had a prior opportunity for cross-examination. Crawford v. Washington, 541 U.S. 36, 68 (2004). However, Crawford does not apply in the present case because it had not yet been issued when the state court of appeals considered petitioner's claim, and the Seventh Circuit has held that Crawford does not apply retroactively. Bintz v. Bertrand, 403 F.3d 859, 867 (7th Cir. 2005). In any event, it is doubtful that Crawford applies on its own terms because petitioner was able to cross-examine Vang at the preliminary hearing. See 541 U.S. at 59, 68.

10

previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant"). Rather, he argues that Vang was not "unavailable."

The Supreme Court had held that "a witness is not 'unavailable' for purposes of the . . . confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." Id. at 724-725. "The lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness. The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness." Roberts, 448 U.S. at 74 (internal citations and quotation marks omitted). Petitioner contends that the state failed to make the necessary effort in his case.

> The state court of appeals, the last court to address the claim on the merits, held:
>
> Lor contends that the State's attempt to secure [Vang's] presence at trial fell short of due diligence because the subpoena was not personally served on [Vang] and was ambiguous as to whose presence was actually required at trial. We are satisfied, however, that the State exerted a good faith effort. First, Wis. Stat. § 885.03 specifically authorizes substituted service of a subpoena at the home of a witness. Secondly, the subpoena identified the witness who was to appear by his birth date. Given [Vang's] prior preliminary hearing testimony, there could be no genuine misunderstanding as to whose presence was being required by the subpoena. In addition, the State contacted [Vang] personally a week before trial to remind him that he needed to be in court, and was told by [Vang] that he would probably come with his parents. When [Vang] failed to show up on the first day of trial, the State obtained a body attachment. Because the State used reasonable means at its disposal to obtain [Vang's] presence in court, we conclude that counsel did not perform deficiently by conceding that [Vang] was unavailable, and the trial court did not commit plain error by admitting [Vang's] preliminary hearing testimony.

(Answer Ex. E at 5.) In reaching this conclusion, the court relied on state cases holding that the prosecution had to use reasonable means to produce the witness, which required

11

due diligence and a good faith effort, before requesting the admission of prior testimony. (Id. Ex. E at 4.)

This decision was not contrary to Supreme Court precedent. Although it did not cite federal cases, the state court applied the correct legal standard from Barber. See Early v. Packer, 537 U.S. 3, 8 (2002) (holding that a state court need not cite Supreme Court cases so long as neither the reasoning nor the result of the state court decision contradicts them).

Neither was the decision an unreasonable application of Barber and its progeny. As the state court noted, the prosecution served Vang, age fifteen, through his father more than a month before trial. Wisconsin law allows substitute service of subpoenas, Wis. Stat. § 885.03, and although the subpoena was addressed to Vang's parent or guardian, it was clear that Vang was the person wanted in court. The subpoena bore his date of birth, Vang had previously testified in this same matter, and the state contacted Vang by telephone about a week before trial to remind him of his obligation to come to court. During that telephonic contact, Vang said that he would probably come with his parents. When Vang failed to appear, the state sought a body attachment, and Vang's father was brought to court, where he advised the court that he had shown Vang the subpoena but did not know where Vang was. The state then requested and was granted a body attachment for Vang, but he could not be located. Only then did the court allow admission of the preliminary hearing testimony. In light of these undisputed facts, I cannot conclude that the state court acted unreasonably in finding Vang unavailable.

Relying on circuit court of appeals cases, e.g., Cook v. McKune, 323 F.3d 825 (10th Cir. 2003); McCandless v. Vaughn, 172 F.3d 255 (3d Cir. 1999); and Valenzuela v. Griffin,

12

654 F.2d 707 (10th Cir. 1981), petitioner contends that because Vang was crucial witness, the state had a special reason to favor Vang, the state could fall back on Vang's previous testimony if he did not appear, and the seriousness of the crimes charged, the prosecutor had a heightened duty to obtain Vang's presence, which the state judiciary failed to recognize. However, he cites no Supreme Court cases in support of this contention. See 28 U.S.C. § 2254(d)(1) (stating that a writ may be granted based only on "clearly established Federal law, as determined by the Supreme Court of the United States"). In any event, these cases are distinguishable.

In Cook, the missing witness, who had received immunity in exchange for his cooperation in the case, had run away once and had to be tracked down and brought back in police custody. Nevertheless, the state allowed him to again be released, "put[ting] itself entirely at the mercy of [the witness's] whim regarding whether or not to return for trial." 323 F.3d at 840. The state also failed to make travel arrangements for the witness, who went out of state and had little money, to return, "thus making it downright likely that something would go wrong. After communications from [the witness] showed he was thinking of staying away, the State made no effort to locate him, though the State had succeeded in locating him before by use of government agencies." Id. The state also failed to issue a warrant for the witness's arrest because he had violated his immunity agreement. Id. In the present case, by contrast, the state did nothing that made Vang's appearance less likely, it served him with process, and sought a body attachment when he failed to appear.

Similarly, in McCandless, the prosecution supported a bail reduction that allowed the cooperating witness to gain his freedom, and even after two failures to appear, two

13

bench warrants and two re-arrests, it sought no alteration in conditions of his bail. Further, the court found that the prosecution's efforts to locate the witness after his third failure to appear could "only be described as casual." 172 F.3d at 268-69. The witness was never served with a subpoena, and the prosecution made no effort to contact the witness's father, who was surety on his bond. In the present case, the state was in no way responsible for Vang's absence, it served him with a subpoena, and it brought his father into court.

      Finally, in Valenzuela, a pre-AEDPA case, the court held:

> A simple statement by the prosecutor that the state had issued a subpoena and bench warrant and "had been looking for her" is not enough. The court must be informed of when the prosecution learned that the witness might not appear and of the steps taken to secure the witness' presence after the likelihood of nonappearance became known. Because the prosecution failed to present such evidence, we find it failed to establish a predicate for the admission of the taped testimony.

654 F.2d at 710. In the present case, the state served Vang one month before trial, contacted him one week before trial, obtained a body attachment for Vang's father who had not seen his son in days, and finally sought a body attachment for Vang. Further, the state courts could reasonably conclude that the prosecution had no reason to believe Vang would not appear until the day of trial.

      Moreover, even applying the "heightened" standard employed in Cook and other cases, petitioner has not shown that the state court's decision was unreasonable. He alleges that Vang had an immunity deal with the state, but he presents no evidence of this and the trial transcript suggests the opposite. (Answer Ex. X at 13.) He further contends that the state had little incentive to find Vang because it could fall back on his preliminary hearing testimony. Again, however, there is no evidence to support this contention. He

14

further asserts that Vang's statement that he would "probably" come to court with his parents should have raised red flags. However, reasonable people can disagree over whether by this Vang meant there was a chance he would not come at all as opposed to a chance he might come without his parents.

Finally, aside from enlisting the assistance of the Milwaukee Police Department's gang squad, petitioner fails to specify what more the state could have done to locate Vang, and petitioner provides no good reason to believe that the gang squad could have tracked Vang down. In any event, the question before me is not whether the state could have done more to locate Vang, or even whether the state's efforts were reasonable. The only question is whether the state court of appeals' decision that the state made a good faith effort was within the boundaries of permissible differences of opinion. Conner v. McBride, 375 F.3d 643, 649 (7th Cir. 2004), cert. denied, 125 S. Ct. 1399 (2005). It was, and so the claim must be denied.[6]

### b. Ineffective Assistance in Considering Plea Offer

Petitioner also claims that his lawyer provided ineffective assistance by recommending that he go to trial rather than take a plea offer of twenty years in prison.[7]

---

[6] For the same reasons, even if petitioner had not procedurally defaulted his ineffective assistance of counsel claim on this ground, I would deny such claim on the merits because the state court of appeals' decision on this issue was not an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984). The state court reasonably found that, because Vang was unavailable, petitioner could not show prejudice.

[7] Specifically, petitioner argues that post-conviction counsel was ineffective in failing to challenge trial counsel's performance in this regard. I will first consider whether trial counsel was incompetent, for if he was not, post-conviction counsel was not ineffective in failing to argue that he was. See Casey v. Frank, 346 F. Supp. 2d 1000, 1012 n.3 (E.D. Wis. 2004).

15

In order to demonstrate ineffective assistance, petitioner must show that counsel's performance fell below an objective standard of reasonableness, and that as a result of counsel's errors he suffered prejudice. <u>Strickland</u>, 466 U.S. at 687. When the defendant contends that counsel's bad advice caused him to forego a favorable plea agreement, he must show through objective evidence that there is a reasonable probability that he would have accepted the proposed plea agreement absent defense counsel's advice. <u>Paters v. United States</u>, 159 F.3d 1043, 1046 (7th Cir. 1998).

The state court of appeals rejected petitioner's claim on both prongs of the <u>Strickland</u> test. Regarding performance, the court held:

> In his Wis. Stat. § 974.06 motion, Lor asserts that trial counsel told him that the State offered to recommend twenty years' imprisonment, presumably to reduced charges, although Lor does not divulge the details of the alleged offer. He claims, however, that he declined the offer because, in the words of Lor's affidavit in support of his motion, counsel told him "the State didn't have enough evidence to convict [him,]" and his "defense of mistaken ... identity was viable." Lor now alleges that a competent attorney would have realized that he had no viable mistaken identity defense because Vang identified him as the person in the car with the gun. Lor claims that Vang's testimony was particularly credible because he was a member of the same gang, the Asian Crips. We are not persuaded.
>
> In <u>State v. Fritz</u>, 212 Wis. 2d 284, 569 N.W.2d 48 (Ct. App. 1997), this court explained that the right to effective assistance of counsel applies to advice regarding acceptance or rejection of a plea agreement, <u>id.</u> at 293. In <u>State v. Lentowski</u>, 212 Wis. 2d 849, 569 N.W.2d 758 (Ct. App. 1997), we determined that counsel's performance was deficient in advising a defendant to reject a plea based on two defenses when, as a matter of law, those defenses were not legally tenable, <u>id.</u> at 853-54. Here, however, Lor's postconviction affidavits do nothing more than allege that counsel informed him that, in his opinion, the evidence was insufficient and that the mistaken identity defense was viable. Lor provides nothing to refute counsel's forecast.
>
> Moreover, we conclude that counsel's defense theory of mistaken identity was reasonable in light of the State's evidence – specifically, the conflicting statements of Vang who had told Detective Michael Wesolowski that he was

> not sure whether it was Lor or Chu Yang who had his hand out the window. The defense theory was also supported by Cheng's failure to pick Lor out of a lineup or photographic array. While the jury ultimately did not believe the theory, this does not mean that counsel's advice was unreasonable.

(Answer Ex. Q at 5-6.)

On the prejudice prong, the court held:

> Lor has failed to establish that, but for counsel's advice, he would have accepted the plea offer. See Fritz, 212 Wis. 2d 284 at 297 ("defendant must show ... that he or she would have in fact accepted the plea bargain but for the lawyer's deficient performance"). Indeed, Lor's statements at sentencing indicated that he chose to proceed to trial, not because of counsel's advice, but rather, because he did not want to admit his guilt. At sentencing, he stated,
>
>> I'm so guilty. I'm so ashamed of myself, more than words can say. Now I'm happy that the truth came out how it did. I can't stand living day by day without the truth known. The fact is I'm not man enough to tell the truth in the first place, that's why I took this case to a jury trial...
>>
>> ...
>>
>> I'm so sorry for misleading everyone, my family, the attorney – my attorneys, the Police Department, and especially your court.
>
> Hence, Lor has failed to establish prejudice.

(Id. Ex. Q at 6.)

Petitioner is not entitled to a writ on this claim. First, the state court applied the correct rule from Strickland and recognized that deficient advice regarding acceptance of a plea bargain could violate that rule. Petitioner cites no Supreme Court decision the state courts allegedly contravened.

Second, the state court reasonably applied the standard. Regarding the performance prong, the state courts followed Strickland's admonition that judicial scrutiny

17

should be highly deferential, for "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." 466 U.S. at 689. Thus, the court must "eliminate the distorting effects of hindsight" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. In the present case, as the state court explained, counsel's recommendation that defendant proceed to trial on a mistaken identity defense was reasonable.[8] There were serious problems with the state's case, and counsel's contention that petitioner stood a good change of acquittal was not so far afield as to call into question his professional competence. Petitioner's conviction of lesser-included offenses supports counsel's estimation. Further, as the state trial judge observed, counsel suggested just a chance of acquittal, he made no guarantee.

Regarding the prejudice prong, the state courts recognized that petitioner had presented affidavits from himself and various family members averring that he was "very interested in accepting the plea bargain offered." However, as the state court of appeals pointed out, petitioner himself stated at sentencing that he took the case to trial because he was not ready to tell the truth about what he had done. Further, as the state trial court noted, it was petitioner's decision to go to trial, and there was no evidence that counsel coerced petitioner in that choice. Finally, as the state trial judge also noted, petitioner failed to provide the details of the proposed plea agreement so that the judge could determine whether the amended charge, if any, would have capped his sentencing discretion at a figure less than petitioner eventually received. If, as seems likely, the twenty

---

[8]Because there is nothing in the record to dispute petitioner's characterization of counsel's advice, I will assume, as the state courts did, that counsel suggested petitioner go to trial.

year figure was to be the state's recommendation only, the judge would have been free to reject it and impose a longer sentence.

In sum, petitioner has not shown that the state courts unreasonably applied Strickland in evaluating the performance of trial counsel.[9] Because the state court reasonably found that trial counsel was not ineffective, there is no need to analyze the performance of post-conviction counsel. Thus, this claim must also be denied.

### III.  CONCLUSION

**THEREFORE, IT IS ORDERED** that petitioner's application for a writ of habeas corpus is **DENIED**, and this case is **DISMISSED**. The Clerk is directed to enter judgement accordingly.

Dated at Milwaukee, Wisconsin, this 18th day of August, 2005.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

---

[9] Petitioner also argues that trial counsel was ineffective because he told petitioner's family that petitioner should go to trial. To the extent that petitioner raises this as a separate claim, rather than as evidence supporting the above claim, it fails for the same reasons. Further, counsel's duty was to petitioner, not his family.